CHICAGO, DANVILLE AND VINCENNES RAILROAD CO.

*v.*

FRANCIS COYER *et al.*

79  373
88a 148

1.  MUNICIPAL CORPORATIONS—*donation to railroads.*  Where the construction of a railroad on a certain route is secured by a pledge made at the ballot box by the legal voters of a town, to deliver to the railroad company the bonds of the town when the road is so constructed, the bonds

should be delivered unless the law was in a substantial manner disregarded in the election.

2.  Same—*election for donation to railroads—signing petition therefor.* It is not necessary that the persons required by the statute to sign the petition for an election in a town, on the question of a donation to a railroad, should do so in person.

3.  Each petitioner might properly subscribe his own name, or he might authorize any person he thought proper to do so for him; and a petition signed under such authority would be a compliance with the statute.

4.  At a meeting legally attended by a majority of the legal voters of a town, the question of calling an election for the purpose of voting on the proposition of donating the bonds of the town to a railroad company, the names of freeholders who were willing to sign a petition for such an election were called for and publicly announced, and a committee appointed to prepare the petition. The committee prepared the petition, and signed the names of the freeholders whose names had been so publicly announced in their presence and hearing in said meeting: *Held,* that such freeholders having made no objection when their names were so announced, their silence must be construed as an express assent that their names should be signed to the petition by the committee.

5.  When the name of each signer to the petition was publicly given to the committee, in the presence of the party, by the meeting, of which he was a part, and no objection made, it was in fact a direction of each of the signers to another person to subscribe his name to the petition.

6.  Evidence—*of a negative character—whether it will overcome positive.* The positive testimony of a town clerk, that he posted the notices of an election, required by law, can not be overcome by the negative testimony of other witnesses, that they did not see such notices in the places where the clerk testified he had posted them.

Appeal from the Circuit Court of Kankakee county; the Hon. Nathaniel J. Pillsbury, Judge, presiding.

Mr. E. Walker, and Mr. I. N. Orr, for the appellant.

Mr. T. P. Bonfield, and Mr. Charles R. Starr, for the appellees.

Mr. Justice Craig delivered the opinion of the Court:

This was a bill in equity, brought by appellees, as taxpayers of the town of St. Ann, in Kankakee county, against

appellant, to enjoin the supervisor and town clerk of the town from issuing and delivering to the Chicago, Danville and Vincennes Railroad Company $30,000 in the bonds of the township, which were donated to the company by a vote of the people, under and by virtue of an election held in the town on the 5th day of June, 1869.

Upon a final hearing of the cause, the court granted the prayer of the bill, and entered a decree directing that the bonds be canceled.

Two grounds were relied upon by appellees to impeach the validity of the election under which the bonds were issued :

*First*—That the petition under which the election was called and held was not signed by twelve freeholders, as required by law.

*Second*—That the notices of the election were not posted as required by the statute.

It appears that on the 11th day of June, 1867, the electors of the town of St. Ann had voted $15,000 to the railroad company, but by the terms of the vote the road was to be constructed on a certain route through the township, and the passenger station was to be located at a designated place. Subsequently, the voters of the town desired a change in the location of the line of the road as well as the station. A public meeting of the voters was therefore held on the 24th day of May, 1869, for the purpose of taking such action as might be thought best to secure the desired result.

At this meeting, it was determined to submit to the voters of the town the proposition to donate to the railroad company $30,000 in the bonds of the town in lieu of the amount of $15,000 previously voted, on condition the road should be constructed on a given route through the town, and the passenger station located at a particular place.

At this public meeting a committee of two was appointed to draft a petition for an election, to be held on the 5th day of June, 1869. It was drafted, and filed with the town clerk,

and purports to be signed by the supervisor of the town, a justice of the peace, and town clerk, and fifteen freeholders, upon which the town clerk called the election.

For the purpose of impeaching the petition, appellees called as witnesses seven of the freeholders whose names appear to the petition, who testified they did not sign their names thereto, and most of them testify that they did not authorize their names to be signed. But the testimony clearly shows, that five of the seven were in the public meeting. voted in favor of calling an election, and subsequently, at the election. voted in favor of the proposition submitted ; and that, when a committee was appointed at the public meeting. it was announced that names of freeholders would have to be added to the petition, and the names of those who were willing to sign were called for; that the names which were signed to the petition were publicly announced and taken down by one of the members of the committee ; that the committee then retired to a convenient place, drafted the petition, and added the names given in the public meeting as persons willing to sign the petition.

It was not necessary that the persons required by the statute to sign the petition before the election should be called, should do so in person. Each petitioner might properly subscribe his own name, or he might authorize any person he thought proper to do the act for him. and a petition signed under such authority would be a compliance with the statute.

The meeting at which this petition for the election originated was largely attended by the voters of the town, a large majority .of whom appear to have favored the calling of the election. The object of the meeting had been discussed, the purpose of the election, the petition for which was then about to be prepared, was fully understood and well comprehended. When names were called for to be signed to the petition, none were in doubt as to the purpose or object or use to be made of the names given.

When, therefore, the names were publicly announced to be

signed to the petition about to be prepared, and taken down by the secretary in the presence and hearing of the persons themselves, and they having made no objection, their silence can not be construed otherwise than an express assent that their names should be signed to the petition by the committee.

When the name of each signer to the petition was publicly given to the committee in the presence of the party, by a meeting of which he was a part, and no objection made, we are aware of no reason that can be urged against the authority of the committee to use the name given—it was, in fact, a direction of each of the signers present to another person to subscribe his name to the petition.

As to five of the seven called by appellees to impeach the petition, as they favored the call of the election, united in selecting a committee to draft a petition, and conferred upon it power to sign the names of freeholders publicly given, and afterwards, at the election, voted for the proposition, they, as well as appellees, are now estopped from denying that the petition was properly signed.

In regard to the other question, that a sufficient number of notices were not posted, it is sufficient to say, all the proof offered by appellees was of a negative character, while, on the other hand, the town clerk, in his testimony, states, positively, that he posted the required number of notices. This must be regarded as conclusive upon the point.

The fact that others testified they did not see notices in certain places where the clerk testified he posted them, is not enough to overcome his testimony, which is positive that the notices were posted.

It is not pretended that the election was unfair or fraudulent, or that anything occurred to prevent a full and free expression of the voters of the town at the ballot box, neither is it pretended that the railroad has not been constructed in the manner required by the vote of the people of the town before the bonds should issue.

By means of the pledge made by the tax-payers at the ballot box, that the railroad company should receive the bonds of the town if it would construct its line of road on a certain route, the tax-payers of the town have secured the road; it is, therefore, but equitable that the bonds should be delivered to the company, unless the law was, in a substantial manner, disregarded in the election, which the record before us does not disclose.

The decree will be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*